UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| N.Z.M., §<br>    *Petitioner*, §<br>§<br>v. §<br>§<br>CHAD WOLF, Acting Secretary, U.S. §<br>Department of Homeland Security; WILLIAM §<br>BARR, Attorney General of the United States, §<br>in their official capacities; MATTHEW T. §<br>ALBENCE, Acting Director of U.S. §<br>Immigration and Customs Enforcement; §<br>DANIEL BIBLE, Field Office Director, San §<br>Antonio Field Office, U.S. Immigration and §<br>Customs Enforcement; and JAVIER ALEMAN, §<br>Warden, Rio Grande Detention Center, §<br>    *Respondents*. § | CIVIL ACTION NO.  5:20-cv-00024 |

## 28 U.S.C. § 2241 PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, N.Z.M.,[1] has been detained for *nearly two years* while he pursues claims for withholding of removal from his home country, the Democratic Republic of Congo ("DRC"). He is eligible for relief from detention on two distinct due process grounds. First, as of the filing of this habeas petition, N.Z.M. has a final order of removal to Brazil. Because Brazil refuses to accept his return there is no significant likelihood that N.Z.M. will be removed in the reasonably foreseeable future. He has been detained for more than six months since entry of the final order and is entitled to habeas relief under *Zadvydas v. Davis*, 533 U.S. 678 (2001). Second, if his

---

[1] Petitioner's name is N▇▇▇ Z▇▇▇ M▇▇▇. *See* ECF Dkt. 2-4, at ¶ 3. In various filings in both the San Antonio Immigration Court and in the Board of Immigration Appeals and in correspondence with DHS Petitioner's name is listed incorrectly as "Z▇▇▇ M▇▇▇ N▇▇▇" and "M▇▇▇ Z▇▇▇ N▇▇▇." Petitioner seeks permission to proceed in this habeas action pseudonymously and simultaneously files a Motion to File Action Using Pseudonym with his petition for habeas corpus. ECF Dkt. 3. Petitioner files under seal a copy of this petition revealing his full name and will serve the same on attorney(s) for Respondents.

1

immigration proceedings are reopened as requested by both N.Z.M. and DHS in a joint motion pending with the Board of Immigration Appeals ("BIA"), N.Z.M. will be eligible for habeas relief from prolonged detention because Respondents have never provided a hearing before a neutral arbiter to determine whether his continued detention is justified.

N.Z.M. files this habeas petition pursuant to 28 U.S.C. § 2241. Petitioner challenges the extent of Respondents' authority under the Fifth Amendment to continue his already prolonged detention. Because continuing N.Z.M.'s unjustified detention plainly violates the Fifth Amendment, Petitioner respectfully requests that the Court grant this habeas application and order his immediate release from Respondents' custody or, in the alternative, a custody hearing before a neutral arbiter to determine whether his continued detention is justified. In support, N.Z.M. shows the following:

**CUSTODY**

1. N.Z.M. is in the physical custody of Respondent Javier Aleman, Warden of the Rio Grande Detention Center in Laredo, Texas. He is in the legal custody of and unlawfully detained at the direction of Respondents Chad Wolf, Acting Secretary, U.S. Department of Homeland Security ("DHS"), and Daniel Bible, Field Office Director, San Antonio ICE Field Office. Petitioner's immigration proceeding falls under the jurisdiction of the Executive Office for Immigration Review ("EOIR"), a dependency of the U.S. Department of Justice and subject to the authority of Respondent William Barr, Attorney General of the United States.

2. At the time of the filing of this petition, Warden Aleman has physical possession of N.Z.M. Upon information and belief, the Rio Grande Detention Center, contracts with DHS/ICE to detain noncitizens pursuant to the Immigration and Nationality Act ("INA"). N.Z.M. is under the direct control of Respondents and their agents.

## JURISDICTION

3. The Court has jurisdiction over this habeas petition pursuant to 28 U.S.C. § 2241 (habeas corpus statute), 28 U.S.C. § 1651 (All Writs Act), 28 U.S.C. § 1331 (federal questions), 28 U.S.C. § 1361 (Mandamus Act), and U.S. Const., Art. I., § 9, Cl. 2 (Suspension Clause).

4. Pursuant to 28 U.S.C. § 2241, district courts have jurisdiction to hear habeas petitions by noncitizens who challenge the lawfulness of their detention under federal law. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Jennings v. Rodriguez*, 138 S.Ct. 180, 839-41 (2018); *Maldonado v. Macias*, 150 F.Supp.3d 788, 794 (W.D. Tex. 2015).

5. Section 1252(f)(1) of the INA does not repeal this Court's authority to grant the relief Petitioner seeks because, *inter alia*, Petitioner is in removal proceedings. *See* 8 U.S.C. § 1252(f)(1) (exempting from limits on review claims by "an individual alien against whom proceedings . . . have been initiated"); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (Section 1252(f) "does not extend to individual cases"). If § 1252(f)(1) did bar the relief Petitioner seeks, it would violate the Suspension Clause. Even if otherwise applicable, § 1252(f)(1) does not bar declaratory relief.

6. This court may grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2241, 2243, 1651, 2201–02 (Declaratory Judgment Act).

## VENUE

7. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 2241(d), because Petitioner is detained at the Rio Grande Detention Facility in Laredo, Texas. The detention center falls within this District.

**PARTIES**

8. Petitioner N.Z.M., a national and citizen of the DRC, presented himself at a Texas port of entry on or about February 22, 2018, and requested asylum. He has been detained ever since. He is currently detained at the Rio Grande Detention Center, located at 1001 San Rio Boulevard, Laredo, Texas 78046.

9. Respondent Javier Aleman is the Warden of the Rio Grande Detention Facility. Upon information and belief, the Rio Grande Detention Center, of which Respondent Aleman is the Warden, contracts with the U.S. Department of Homeland Security. As Warden, he is the immediate physical custodian of N.Z.M. He is sued in his official capacity.

10. Respondent Chad Wolf is the Acting Secretary, U.S. Department of Homeland Security. As such, he has broad authority to enforce U.S. immigration laws. In his capacity as Acting Secretary, Respondent Wolf oversees ICE's Office of the Principal Legal Advisor ("OPLA"), which serves as the exclusive representative of DHS in removal proceedings and in custody redetermination hearings before Executive Office for Immigration Review ("EOIR"), and ICE/ERO, which is responsible for noncitizens in immigration custody. He has legal custody over Petitioner and is authorized to release him. He is sued in his official capacity.

11. Respondent Daniel Bible is the Field Office Director for the San Antonio ICE office. As such, he oversees all ICE/ERO functions and detainees in the San Antonio area of responsibility for ICE, including detainees at the Rio Grande Detention Center. He has legal custody over Petitioner and is authorized to release him. He is sued in his official capacity.

12. Respondent Matthew T. Albence is the Acting Director of ICE. In that capacity, he has authority over all ICE policies, procedures, and practices relating to ICE enforcement operations

and detention facilities. He is responsible for ensuring that all people held in ICE custody are detained in accordance with law.

13. Respondent William Barr is the Attorney General of the United States. The Attorney General has responsibility for the administration of the immigration laws pursuant to 8 U.S.C. § 1103 and oversees the EOIR and, in turn, the Board of Immigration Appeals ("BIA") and Immigration Courts. The Immigration Courts and BIA are responsible for the adjudication of Petitioner's application for withholding of removal and the management of removal proceedings against Petitioner, which form the purported basis for Petitioner's detention. The Attorney General and the Immigration Courts conduct custody redetermination hearings for some individuals in removal proceedings and may order release. The Attorney General is sued in his official capacity.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14. There is no statutory obligation for Petitioner to exhaust his administrative remedies prior to filing this habeas petition, since he is not requesting review of a final order of removal. *Cf.* 8 U.S.C. § 1252(d)(1) (requiring exhaustion of administrative remedies prior to challenging removal order in circuit court). Nevertheless, N.Z.M. has exhausted all available administrative remedies.

## FACTUAL AND LEGAL BACKGROUND

15. Petitioner, N.Z.M., is a 29-year-old citizen of the DRC. Petitioner suffered persecution and torture in the DRC on the basis of a protected ground and fled first to Brazil and then to the United States.

16. During the 2011 presidential elections in the DRC, Petitioner worked as a polling station witness for the Independent National Electoral Commission (*Commission Electorale Nationale Indépendante* or "CENI"). N.Z.M. witnessed a candidate bring pre-marked ballots into the polling station. He made a detailed report of this incident and distributed it to political parties in the DRC.

After publication of the electoral results, Petitioner learned that the candidate, Emmanual Ramazani Shadary, a violent and repressive former Vice Prime Minister and Minister of the Interior and Security in the DRC, was searching for him.

17. In about March of 2013, Petitioner was kidnapped. The kidnappers tied Petitioner's arms behind his back, blindfolded him, and drove him to an unknown location. The kidnappers held Petitioner for two days without food, water, or access to a bathroom. During this time two individuals interrogated Petitioner about his disclosure of election fraud. The kidnappers tortured him with an electrified device. Petitioner eventually lost consciousness and found himself at a hospital where he was able to escape his kidnappers with the assistance of a doctor.

18. Petitioner fled to Brazil after he escaped his kidnappers. He applied for and was granted legal status in Brazil. N.Z.M. obtained a resident card and driver's license there.

19. In about September of 2017, Petitioner was attacked by a group of men who, at the direction of a police officer, restrained him, beat him with a chain, and shot at him. Petitioner managed to escape but was afraid to stay in Brazil after the attack. Fearing further persecution, Petitioner fled to the United States.

20. Petitioner traveled through South America and Central America and presented himself to U.S. immigration officials on February 22, 2018 at the Laredo port of entry to request asylum. Petitioner presented his identification card from the DRC to immigration officials at the port of entry. U.S. immigration officials took possession of Petitioner's identification card and detained Petitioner at the port of entry, later transferring Petitioner to the Rio Grande Detention Center in Laredo. Petitioner has been held at various immigration detention facilities in the United States for nearly two years since he initially presented at the port of entry requesting protection.

21.     Respondents did not conduct a "credible fear interview" of N.Z.M., *see* 8 U.S.C. § 1225(b)(1)(B)(i), because they could not obtain a Lingala interpreter. Instead Respondents placed Petitioner directly into removal proceedings under 8 U.S.C.. § 1229a. Petitioner was served with a Notice to Appear ("NTA") on or about March 14, 2018.

22.     Because Petitioner first sought asylum at a port of entry he is considered an "arriving alien." 8 C.F.R. § 1001.1(q). As an "arriving alien," N.Z.M. is not entitled to a custody redetermination hearing before an immigration judge ("IJ") under current regulations. 8 C.F.R. § 1003.19(h)(2)(i)(B). The only means for release available to Petitioner is through a grant of parole by ICE. 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. §§ 1.1(q), 208.30(e)-(f), 212.5, and 235.3.

23.     On or about July 30, 2018, N.Z.M. requested parole. Exh. 1. ICE Assistance Field Office Director Robert Cerna denied Petitioner's request. *Id*.

24.     Petitioner appeared *pro se* for five preliminary "Master Calendar" hearings, during which time he admitted to the charges in the NTA, conceded removability, and filed his Form I-589, Application for Asylum and Withholding of Removal.

25.     At Petitioner's merits hearing the IJ found Petitioner to be credible. The IJ determined that Petitioner had firmly resettled in Brazil and therefore declined to consider his claim for asylum and other protection from removal to the DRC. The IJ did not provide Petitioner with an opportunity to testify regarding his fear of return to the DRC and only elicited testimony with regard to Petitioner's fear of return to Brazil. Ultimately, the IJ denied all relief and ordered Petitioner's removal to Brazil. Petitioner reserved his right to appeal.

26.     The IJ's October 10, 2018 written order explicitly designates Brazil as the country of removal. In his oral decision, the IJ stated, "The Court has designated Brazil as the country of removal since the respondent has been granted asylum in Brazil." The IJ did not assess Petitioner's

eligibility for withholding of removal or Convention Against Torture protection from the DRC. The IJ explained: "The Court finds that the respondent has firmly resettled in Brazil. . . . As such, the respondent is ineligible for asylum from the Democratic Republic of the Congo. The respondent fears returning to Brazil. So the Court will consider his application for asylum from Brazil." In the written removal order, the IJ personally crossed out "DEMOCRATIC REPUBLIC OF CONGO" and handwrote "Brazil" as the country of removal. Exh. 2. DHS indicated no opposition to the IJ's designation of Brazil as the country of removal and waived appeal of the IJ's decision.

27. On November 13, 2018, an ICE official informed Petitioner that Brazil would not accept his return. ICE began attempting to unlawfully obtain Petitioner's removal to the DRC without permitting adjudication of N.Z.M.'s claims for protection from removal to the DRC. ICE officials attempted to obtain Petitioner's consent to obtain documents that would authorize his travel and facilitate removal to the DRC. Fearing that ICE would attempt to remove him to the DRC without providing a meaningful opportunity to have his claim heard for withholding of removal to that country, Petitioner did not provide his consent.

28. Petitioner appealed the IJ's order and argued before the BIA *inter alia* that the IJ's failure to evaluate his claims for protection from the DRC constituted error. DHS filed no response to Petitioner's appeal and took no action to inform the BIA of ICE's efforts and intent to remove Petitioner to the DRC.

29. On June 7, 2019, the BIA issued a decision affirming the IJ's denial of relief from removal to Brazil and dismissing his appeal. The BIA upheld the IJ's determination that Petitioner was firmly resettled in Brazil and ineligible for asylum from the DRC. The BIA noted that "the Immigration Judge did not designate the [DRC] as the country of removal; rather, he solely

selected the country of Brazil." The BIA also held that "the Immigration Judge was not obligated to adjudicate the withholding of removal claims to the [DRC] as it was not a designated country of removal, and the evidence does not indicate that the DHS intends to remove him to the [DRC]." The BIA concluded that "[a]t this juncture, therefore, we discern no basis to remand the record." However, it observed in a footnote that "[i]f the DHS in the future attempts to remove the respondent to the Democratic Republic of the Congo, [N.Z.M.] is free to file a motion to reopen to seek withholding of removal from that country." The BIA's removal order became final on June 7, 2019. Exh. 3.

30. DHS continued to attempt to unlawfully obtain Petitioner's removal to the DRC without permitting adjudication of N.Z.M.'s claims for relief from removal to that country following entry of a final removal order in Petitioner's ongoing immigration proceedings.

31. Petitioner filed a Motion to Reopen Removal Proceedings on November 29, 2019, requesting that the BIA remand his case to the IJ for adjudication of his claims for relief with respect to the DRC. He also filed a concurrent Motion to Stay Removal pending the adjudication of his Motion to Reopen.

32. ICE informed Petitioner on or about January 28, 2020 that ICE had obtained documents that would allow ICE to remove Petitioner to the DRC and that he was scheduled to be deported this month, in February 2020. With the assistance of counsel, Petitioner was able to obtain DHS's agreement not to deport Petitioner to the DRC on the day they had previously scheduled, February 22, 2020. Exh. 4.

33. DHS now agrees that Petitioner's case should be reopened and remanded to the IJ for further consideration of his claims for relief from removal to the DRC. The agency has joined in a motion to reopen Petitioner's immigration proceedings. Exh. 5.

34. Petitioner has been detained for more than six months following entry of a final order of removal in his immigration proceedings. Because Brazil, the only country designated for N.Z.M.'s removal, refuses to accept his return and because DHS now agrees that remand to the IJ is necessary to adjudicate N.Z.M.'s claims for relief from removal to the DRC, there is no substantial likelihood that Petitioner will be removed in the reasonably foreseeable future.

35. During the nearly two years that N.Z.M. has been detained, Respondents have never conducted a custody hearing to determine whether N.Z.M.'s detention is justified by his risk of flight or danger to the community.

36. Petitioner has no criminal record and is not a danger to the community. Neither is Petitioner a flight risk. Petitioner has several sponsors available to support him upon his release from detention, including La Posada Providencia, a shelter for immigrants in San Benito Texas, Casa Marianella, a shelter and service provider in Austin, Texas for asylum seekers, and two friends and former schoolmates who live in Dallas, Texas. Both are legal permanent residents in the United States with stable living arrangements and vehicles. They have agreed to provide housing and help ensure that Petitioner attends the hearings in his case and complies with any conditions of release.

## COUNT ONE
## Due Process

37. Petitioner alleges and incorporates by reference Paragraphs 1 through 36, above.

38. Petitioner's continued detention under 8 U.S.C. § 1231(a)(6) for more than six months after his removal order as to Brazil became final, with no significant likelihood that Petitioner will be removed in the reasonably foreseeable future, violates his right to due process guaranteed by the Fifth Amendment to the United States Constitution.

39. Alternatively, if the BIA reopens Petitioner's immigration proceedings he will revert to his status as an "arriving alien" detained pursuant to 8 U.S.C. § 1225(b)(2)(A). Petitioner's prolonged

detention without a custody hearing before a neutral arbiter violates his right to due process under the Fifth Amendment to the United States Constitution.

## PRAYER FOR RELIEF

Petitioner prays that this Court grant the following relief:

A. Assume jurisdiction over this matter pursuant to 28 U.S.C. § 2241 (habeas corpus statute), 28 U.S.C. § 1651 (All Writs Act), 28 U.S.C. § 1331 (federal questions), 28 U.S.C. § 1361 (Mandamus Act), and U.S. Const., Art. I., § 9, Cl. 2 (Suspension Clause);

B. Grant the writ forthwith and order the immediate release of Petitioner or, in the alternative,

C. Issue an Order to Show Cause directing Respondents to show cause within three days or, for good cause shown, additional time not to exceed twenty days, why the writ should not issue, as required by 28 U.S.C. § 2243;

D. Conduct a hearing no more than five days after Respondents' return, unless good cause shown requires additional time, 28 U.S.C. § 2243, and determine that Petitioner's prolonged detention without hearing violates the Fifth Amendment;

E. Following the hearing on Petitioner's habeas corpus claim, order appropriate relief in the form of:

    i. Petitioner's immediate release, with appropriate conditions of supervision if necessary;

    ii. In the alternative, order an immediate custody hearing conducted by this Court in which the government bears the burden of showing by clear and convincing evidence that Petitioner's continued detention is justified based on flight risk or dangerousness; or

    iii.    In the alternative, order an immediate custody hearing conducted by the immigration court in which the government bears the burden of showing by clear and convincing evidence that Petitioner's continued detention is justified based on flight risk or dangerousness, with instructions that 1) should the government be unable to meet its burden, the immigration judge shall order Petitioner's immediate release, with appropriate conditions of supervision if necessary, taking into consideration Petitioner's ability to pay a bond, and 2) should the immigration judge refuse to conduct the hearing on jurisdictional grounds or otherwise refuses to comply with any Court orders, this Court will order Petitioner's immediate release.

F. Award to Petitioner reasonable attorneys' fees, costs, and other disbursements pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

G. Grant any other relief that this Court deems just and proper.

Dated: February 21, 2020.    Respectfully submitted,

TEXAS RIOGRANDE LEGAL AID, INC.

*/s/ Peter McGraw*
Peter McGraw
Attorney in Charge for Plaintiff
State Bar No. 24081036
S.D. Tex. No. 2148236
1206 East Van Buren St.
Brownsville, Texas 78520
Phone: (956) 982-5543
Fax: (956) 541-1410
pmgcgraw@trla.org

Susan L. Watson
Attorney for Plaintiff
State Bar No. 24028115
311 Plus Park, Ste. 135
Nashville, TN 37217

12

Tel: (615) 750-1200
Fax: (615) 366-3349
swatson@trla.org

13