Case 5:20-cv-00024 Document 23 Filed on 05/28/20 in TXSD Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
May 28, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| N.Z.M., | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:20-CV-24 |
| | § | |
| CHAD WOLF, *et al*, | § | |
| | § | |
| Respondents. | § | |

## MEMORANDUM AND ORDER

Before the Court are Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1) and Respondents' Motion to Dismiss (Dkt. No. 15). The Court has carefully reviewed the record, the parties' arguments, and the applicable law. For the reasons below, the Court **GRANTS** habeas corpus and **DENIES** the motion to dismiss. Respondents are **ORDERED** to immediately release Petitioner from custody pending the resolution of his immigration proceedings.

### I. BACKGROUND

Petitioner is a citizen of the Democratic Republic of Congo (DRC) (Dkt. No. 2-5 at 43). He alleges that while working as an election monitor there, he witnessed election fraud in favor of the incumbent president and members of his party. After he reported the fraud, Petitioner was kidnapped and tortured (Dkt. No. 2-4 at 2–3).

Around 2013, Petitioner fled to Brazil, where he was granted asylum (Dkt. No. 2-5 at 43). In 2017, however, he was violently assaulted at the direction of a Brazilian police officer (*id*. at 45–55). Fearing for his life, Petitioner fled to the United States.

In February 2018, he presented himself at a port of entry in Laredo, Texas, and requested asylum (Dkt. No. 2-4 at 7).

In October 2018, an Immigration Judge (IJ) ordered Petitioner removed to Brazil, finding that he had firmly resettled there before coming to the United States. As a result, the IJ did not consider Petitioner's claim that he would be persecuted if he returned to the DRC (Dkt. No. 2-5 at 5). The Board of Immigration Appeals (BIA) affirmed the IJ's decision in June 2019 (Dkt. No. 2-1).

For reasons that are not evident from the record, Brazil refused to accept Petitioner (Dkt. No. 2-8 at 3). In February 2020, DHS joined Petitioner's pending motion to reopen immigration proceedings so that an immigration court could adjudicate Petitioner's asylum claims from the DRC (Dkt. No. 2-3). On May 27, 2020, the BIA granted the joint motion to reopen and remanded the matter to the IJ for further proceedings (Dkt. No. 21-1 at 7–8).

Meanwhile, Petitioner filed the instant petition for a writ of habeas corpus, claiming that his prolonged detention violates his Fifth Amendment right to due process. He seeks immediate release from custody or, alternatively, a custody hearing before a neutral arbiter (Dkt. No. 1 at 2). Respondents have filed a motion to dismiss under Rule 12(b)(6) (Dkt. No. 15), and Petitioner has filed a response (Dkt. No. 17).

## II. LEGAL STANDARD

"Section 2241 of Title 28 confers federal subject-matter jurisdiction over habeas petitions filed by aliens who allege that their detention violates the Constitution,

laws, or treaties of the United States." *Diallo v. Pitts*, 1:19-CV-216, 2020 WL 714274, at *3–4 (S.D. Tex. Jan. 15, 2020), *adopted*, 2020 WL 709326 (S.D. Tex. Feb. 12, 2020). To be sure, federal courts lack jurisdiction to review a challenge to a final order of removal or to an action committed to the discretion of the Attorney General. *Id*. Federal courts can, however, "adjudicate claims challenging the constitutionality of an alien's continued detention." *Hernandez-Esquivel v. Castro*, 5-17-CV-0564-RBF, 2018 WL 3097029, at *2 (W.D. Tex. June 22, 2018).

### III. ANALYSIS

The BIA's decision to reopen immigration proceedings "extinguish[ed] the finality" of Petitioner's removal order to Brazil. *Nken v. Holder*, 556 U.S. 418, 430 n.1 (2009). Petitioner's status changed from that of a removable alien detained under 8 U.S.C. § 1231, to that of an arriving alien detained under 8 U.S.C. § 1225(b). In *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018), the Supreme Court held, as a matter of statutory interpretation, that § 1225(b) does not impose any limit on the length of an alien's detention. However, the Court did not reach the petitioner's constitutional due process claims, instead remanding to the Ninth Circuit to consider those claims in the first instance. *Id.* at 851.

Respondents contend that given his status as an arriving alien, Petitioner has limited or no due process rights and therefore may be detained indefinitely (Dkt. No. 15 at 12–19). While federal immigration statutes afford more rights to removable aliens than to arriving aliens, Respondents offer no persuasive reason to read that distinction into the Constitution. The text of the Fifth Amendment does not

distinguish between citizens and noncitizens, let alone classes of noncitizens. U.S. CONST. AMEND. V. And, the Supreme Court has already held, in cases involving removable aliens, that unjustified, indefinite detention violates due process. *Zadvydas v. Davis*, 533 U.S. 678, 692–93 (2001).[1]

The same concerns that animate the decision in *Zadvydas* apply to detained asylum-seekers like Petitioner. "Just like a deportable resident alien, Petitioner has a fundamental interest in [his] physical liberty that warrants 'strong procedural protections.'" *L.N. v. Nielson*, 5:18-MC-932, dkt. no. 32, at 15 (S.D. Tex. Mar. 29, 2019) (quoting *Zadvydas*, 533 U.S. at 691). The Government, in contrast, does not have a legitimate interest in detaining Petitioner for an extended period without determining whether he poses a flight risk or a danger to the community. *See id.*

Thus, the Court agrees with the weight of authority that arriving aliens subjected to unreasonably prolonged and unnecessary detention have a due process right to be released from custody. *See, e.g., id.* ("[R]ecent cases … have concluded that inadmissible aliens do have a right to be free from prolonged detention that no longer serves its stated purpose."); *Tuser E. v. Rodriguez*, 370 F. Supp.3d 435, 442 (D.N.J. 2019) (20-month detention violated due process); *Wang v. Brophy*, 2019 WL 112346, at *3 (W.D.N.Y. Jan. 4, 2019) (two-year detention was "unreasonable in violation of the Due Process Clause"); *Jamal A. v. Whitaker*, 358 F. Supp.3d 853, 859

---

[1] The Court finds that *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), on which Respondents rely, is limited to its facts because of its unique national security context. *See Kouadio v. Decker*, 352 F. Supp.3d 235, 239–40 (S.D.N.Y. 2018) (explaining *Mezei*'s cold war backdrop).

(D. Minn. 2019) (19-month detention without bond hearing violated due process); *Lett v. Decker*, 346 F. Supp.3d 379, 387–88 (S.D.N.Y. Oct. 10, 2018) (10-month detention where delay was attributable to IJ violated due process); *Ahad v. Lowe*, 235 F. Supp.3d 676, 686–88 (M.D. Pa. 2017) (20-month detention "whose on-going duration is unknown" violated due process); *Maldonado v. Macias*, 150 F. Supp.3d 788, 811 (W.D. Tex. 2015) (26-month detention without bond hearing violated due process).

To determine whether Petitioner's detention is unreasonably prolonged, courts consider three factors: "(1) the length of time Petitioner has already been detained; (2) whether Petitioner is responsible for the delay; and (3) whether Petitioner has asserted defenses to removal." *L.N.*, 5:18-MC-932, dkt. no. 32, at 21 (quoting *Perez v. Decker*, 2018 WL 3991497 (S.D.N.Y. Aug. 20, 2018)). First, Petitioner has been detained for two years and three months—since his arrival at the port of entry in February 2018. Courts generally consider detention of over one year unreasonably prolonged. *Id.* (collecting cases). And, since the BIA has granted the motion to reopen immigration proceedings, Petitioner's detention is not likely to end soon.

Second, the Court finds that Respondents are responsible for most of the delay in Petitioner's case. Respondents knew at least as early as November 2018 that Brazil had refused to accept Petitioner (Dkt. No. 2-8 at 3). Yet they did not join in Petitioner's motion to reopen immigration proceedings until February 2020—over a year later (Dkt. No. 2-3). Third, Petitioner has asserted a defense to removal in his asylum application. While the Court may not review the merits of Petitioner's application, it is "sufficient to note [its] existence and the resulting possibility that

5

the Petitioner will ultimately not be removed, which diminishes the ultimate purpose of detaining the Petitioner pending a final determination." *Lett*, 346 F. Supp.3d at 388. The Court finds, therefore, that the duration of Petitioner's detention has become manifestly unreasonable.

Petitioner argues that the record before the Court supports an order granting his immediate release, because it shows that he is not a flight risk or a danger to the community (Dkt. No. 2 at 24). He highlights that he has never committed a crime, that he properly applied for asylum at a port of entry, and that the IJ found him to be a credible witness (*id.*). Petitioner also has provided letters of financial and other support from two permanent-resident friends who live near Dallas, Texas (Dkt. Nos. 2-22; 2-23) and from Casa Marianella, a refugee shelter near Austin, Texas (Dkt. No. 2-21).

Petitioner further argues that were the Court to refer this matter to an IJ for a bond hearing, the IJ would be unlikely to conduct a meaningful hearing. Under current agency regulations, immigration courts are not permitted to redetermine custody of inadmissible aliens. 8 C.F.R. § 1003.19(h)(2)(i)(B). Several courts have noted that immigration judges were unwilling to comply with court orders to conduct a bond hearing. *See, e.g.*, *L.N.*, 5:18-MC-932, dkt. no. 33, at 2 ("[T]he IJ found, despite the Court's directive …, that he lacked jurisdiction to review Petitioner's custody because she 'is [an] arriving alien.'"); *Ramirez v. Watkins*, B:10-126, 2010 WL 6269226, at \*19 (S.D. Tex. Nov. 3, 2010) ("[I]t is highly doubtful that sending the matter back to that same immigration official, or one so similarly constrained, would

lead to a different result."); *see also Baez-Sanchez v. Barr*, 947 F.3d 1033, 1035–36 (7th Cir. 2020). Conversely, Respondents do not even suggest that Petitioner is a flight risk or a danger to the community. Nor do they challenge Petitioner's contention that ordering a bond hearing before an IJ may be futile.

"Settled case law has long acknowledged that the power to set bail in habeas proceedings is a legal and logical concomitant of the court's habeas corpus jurisdiction." *L.N.*, 5:18-MC-932, dkt. no. 33, at 23 (quoting *Ahad*, 235 F. Supp.3d at 689). Having found that the duration of Petitioner's detention violates due process, the Court also finds that "the grant of bail [is] necessary to make the habeas remedy effective." *Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir. 2001). The Court therefore imposes an *unsecured* bond of $5,000 and orders Petitioner's immediate release.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1) is **GRANTED**, and Respondents' Motion to Dismiss (Dkt. No. 15) is **DENIED**. Respondents are **ORDERED** to immediately release Petitioner from custody, on an unsecured bond of $5,000, pending the resolution of his immigration proceedings.

It is so **ORDERED**.

**SIGNED** May 28, 2020

Marina Garcia Marmolejo
United States District Judge